UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KIRK FITZGERALD,

                Plaintiff,                                Case No. 23-13169
                                                  Honorable David M. Lawson
v.                                        United States District Judge

METROPOLITAN LIFE INSURANCE
COMPANY,

                Defendant.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE
ADMINISTRATIVE DENIAL OF LONG-TERM DISABILITY
BENEFITS AND DENYING DEFENDANT'S MOTION
TO AFFIRM ADMINISTRATOR'S DECISION**

Plaintiff Kirk Fitzgerald worked for nearly ten years for Nexteer Automotive as a production machine operator. In 2015, he developed severe health problems that prevented him from working. He applied for and was granted short-term disability benefits under an employee welfare benefit plan administered by defendant Metropolitan Life Insurance Company (Met Life) and governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq*. After exhausting those benefits, Fitzgerald applied for long-term disability benefits in 2016, shortly after the plan was amended. His application was granted, and he received benefits until the plan administrator terminated them on December 15, 2020. His appeal of that decision to the plan administrator was unsuccessful, and he commenced the present action under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) to recover plan benefits. The parties filed cross-motions on the administrative record, and the Court heard oral argument on June 18, 2016. The parties disagree over which version of the Plan applies to this claim. Based on the date of the claim, the later version governs, and the evidence in the record establishes that Fitzgerald qualifies for LTD

benefits thereunder.  However, the later version of the plan limits the benefits available to 60 months after the qualifying date.  Therefore, Fitzgerald's long-term disability benefit award will be limited to the months left in the 60-month period.

I.

A.

Fitzgerald began working for Nexteer Automotive as a machine operator in 2005.  He developed severe health problems in 2015 when he was 39 years old.  Most of these problems stemmed from psychiatric illnesses, including major depressive disorder, bipolar disorder, general anxiety disorder, borderline personality disorder, and impulse control disorder.  Fitzgerald also experienced physical ailments, including pelvic floor dysfunction and back discomfort, which inflicted chronic pain.  Because of those illnesses, the plaintiff suffered from limited insight and judgment, extreme irritability, unstable and uncontrollable moods, sleep deprivation, racing thoughts, and intermittent suicidal ideation.  Ultimately, the plaintiff's illnesses and symptoms severely interfered with his daily functioning.

Because of his health problems, Fitzgerald stopped working on October 23, 2015.  Nexteer offered its employees short- and long-term disability benefits through an ERISA-governed employee welfare plan administered by defendant Met Life.  Fitzgerald was a plan participant and eligible for benefits.  The record contains two certificates describing the plan's disability insurance benefits: one effective January 1, 2011, and another effective January 1, 2016.  The differences in the disability coverage are discussed below.

Fitzgerald sought short-term disability (STD) payments, primarily citing his psychiatric illnesses.  After investigating, the defendant concluded that Fitzgerald experienced "significant symptoms of depression and anxiety that would make it unsafe to perform duties as a production

machine operator on a factory floor."  ECF No. 9-5, PageID.2819.  The defendant approved his claim for STD payments through December 31, 2015.  The defendant then extended his STD payments numerous times in 2016.  Each time, it concluded that the plaintiff's psychiatric conditions prevented him from performing the "medium" job-class duties of a production machine operator — which required him to control his emotions, communicate effectively, work with others, and exercise sound judgment when working with machinery.

B.

After he exhausted his STD benefits, Fitzgerald applied for long-term disability (LTD) benefits.  The defendant approved Fitzgerald's LTD claim on October 21, 2016, applying the 2016 certificate's definition of disability, which differed from the 2011 certificate's definition.  The 2011 certificate states that a plan participant qualified as disabled "due to [s]ickness" if (1) he was "receiving Appropriate Care and Treatment" for his sickness "and complying with the requirements of such treatment"; and (2) he was "unable to earn more than 60% of [his] Predisability Earnings for any employer in [his] Local Economy at any gainful occupation for which [he is] reasonably qualified taking into account [his] training, education, and experience."  ECF No. 9-1, PageID.55.

The 2011 certificate also included terms governing LTD claims processing and the duration for which a participant could receive LTD payments.  First, it stated that once approved for LTD payments, a participant must furnish proof that he "continue[s] to be [d]isabled," *id.* at PageID.64, meaning "[w]ritten evidence satisfactory to [the defendant]" that he "has satisfied the . . . requirements for any benefit described" in the certificate and that establishes, in part, the "nature and extent of the loss or condition," *id.* at PageID.58.  Second, it included a maximum benefits period, generally determined by the length of the employee's employment at the onset of disability,

- 3 -

reduced by the period during which the employee was entitled to receive sickness and accident benefits. *Id.* at PageID.53.  Third, the 2011 certificate specified that a participant's LTD payments would end at the earliest of (1) the maximum benefits period's end date, (2) the date the participant is no longer disabled, or (3) the date the participant fails "to provide required [p]roof of continuing disability." *Id.* at PageID.68.

The 2016 certificate also required a participant to provide proof that he remains disabled when the defendant requests such proof, and it carried over the term that specified when LTD payments end.  But it differed from the 2011 certificate by establishing the maximum benefits period at sixty months.  It also revised the two-part definition of disability.  It left the first prong intact, but it altered the second part by specifying that a participant must be "unable to engage in any occupation for remuneration or profit covered under a collective bargaining agreement with" Nexteer and must not be "working in an occupation for any other employer."  ECF No. 9-4, PageID.743.

The defendant determined that Fitzgerald was disabled within the meaning of the 2016 certificate.  It based its decision on Fitzgerald's "severe depression, mood disorder," and bipolar diagnoses preventing him from performing "the duties of [a]ny [o]ccupation within the employer." *Ibid.*  In the four years that followed, medical records revealed that the plaintiff's condition did not meaningfully improve despite consistent psychiatric treatment.  ECF No. 9-3, PageID.110-431. He also developed several physical ailments, including degenerative disc disease in his back, fibromyalgia, irritable bowel syndrome, hypertension, chronic maxillary sinusitis, and small intestinal bacterial overgrowth, which the plaintiff reported aggravated his psychiatric state. *See* ECF No. 9-4, PageID.1006, 1008-09, 1126, 1129, 1495.  Based on Fitzgerald's psychiatric conditions, the defendant continued to pay him LTD after claim reviews through 2020.

C.

In 2017, Fitzgerald applied for Social Security disability benefits (SSD), which an administrative law judge for the Social Security Administration denied on April 1, 2019. The ALJ found that Fitzgerald suffered from severe psychiatric and physical impairments, including his major depressive disorder, general anxiety disorder, and degenerative disc disease. However, the ALJ determined that none of those impairments, although severe, limited his ability to function to a degree that satisfied the Social Security Act's disability requirements, concluding in light of a vocational expert's findings that Fitzgerald could perform a limited range of medium-exertion work, such as working as a dishwasher, warehouse worker, hand packer, and janitor.

The ALJ reasoned that the objective evidence in his medical reports indicated that, although he experienced a depressed and anxious mood, Fitzgerald was otherwise stable, experienced no limitations to his ability to learn, reason, or exercise judgment, and was generally oriented, concentrated, and cooperative. The ALJ determined that his physical impairments did not severely impair his functioning, reasoning that his medical records established that he could perform routine tasks. The ALJ also emphasized that Fitzgerald admitted that he could perform daily tasks like cooking, cleaning, shopping, driving, and fishing.

Fitzgerald appealed the SSD denial. While that appeal was pending, the defendant continued to pay him LTD benefits. Notably, in January 2020, after a routine review, the defendant reapproved his claim, finding that "medical continue[d] to support" the plaintiff's claim. ECF No. 9-3, PageID.432-33. However, the SSA upheld the ALJ's denial of Fitzgerald's SSD application on March 31, 2020.

D.

Not long after the SSD appeal decision, the defendant opened another claim review.  It requested medical records from January 2020 onward and supplemental questionnaires from Fitzgerald's medical providers, including his psychiatrist, Dr. Mukesh Lathia; his counselor, Diana Hobson; and his primary care physician, Dr. David Jordahl.  Those three providers sent the defendant most of the requested information.

Dr. Lathia, who had treated the plaintiff for his psychiatric illnesses since November 2017, returned several records from the plaintiff's visits from January 2020 to July 2020.  At many of the visits, the plaintiff reported having unstable moods, insomnia, and a reduced appetite.  Based on observations of Dr. Lathia and his staff, the reports revealed that the plaintiff's judgment and insight were intact, his behavior was appropriate and calm, and his thinking was organized at many of the visits.  ECF No. 9-4, PageID.1305, 1311, 1315, 1318-19.  But there also were reports that Fitzgerald routinely exhibited a depressed or anxious mood and somatic preoccupation, and at times reduced sleep and suppressed appetite.  *Id.* at PageID.1305, 1311, 1315, 1317.

Dr. Lathia also returned the supplemental questionnaire describing Fitzgerald's functional capacity, reiterating that he continued to suffer from severe anxiety, depression, insomnia, and somatic preoccupation.  He explained that the stress at work would aggravate those conditions and that the plaintiff "cannot do any manual work."  *Id.* at PageID.1786-87.  Dr. Lathia opined that Fitzgerald showed a continued inability to control his emotions and maintain his focus and concentration throughout a normal workday, which significantly affected his ability to function.  Dr. Lathia also concluded that Fitzgerald struggled to perform daily activities such as driving, socializing, caring for others, shopping, and making decisions about his legal and financial matters.

Fitzgerald's therapist, Diane Hobson, provided the defendant with records from January 2020 to September 2020.  Ms. Hobson observed that the plaintiff was oriented, calm, and had organized thinking during each of his visits.  At the same time, however, throughout those visits, Fitzgerald maintained depressed and anxious moods, moderately impaired functioning, reduced sleep, and hopelessness.  And although he did not report having suicidal ideation, Fitzgerald routinely reported feeling agitated, angered, and frustrated.

Dr. Jordahl, the plaintiff's primary care physician who treated his physical ailments, submitted medical records from his visits and a supplemental questionnaire.  The medical records reflected the plaintiff's various physical ailments and treatment plans for them.  Moreover, they reported that although Fitzgerald was attentive and calm during the visits, he generally exhibited a depressed mood.  They also stated that the pain from his physical ailments aggravated his depression and that his depression was not controlled.  However, in the supplemental questionnaire, Dr. Jordahl imposed no substantial restrictions on Fitzgerald's ability to work and deferred to Dr. Lathia's restrictions.

After receiving the records from Fitzgerald's providers, the defendant hired two physician consultants to review the medical records supporting his claim.  Dr. Zaid Fadul analyzed Fitzgerald's physical ailments and produced a report assessing whether they limited his ability to work.  Dr. Akbar K Shinwari, a psychiatrist, did the same for the plaintiff's psychiatric conditions.

Dr. Shinwari prepared a report on September 28, 2020 after reviewing the administrative file, including Fitzgerald's claim logs, treatment records from Dr. Lathia and Diane Hobson covering the relevant period, and supplemental questionnaires.  Based on that review, Dr. Shinwari concluded that "the medical information provided does not support any psychiatric functional impairment or limitation for the time period current and beyond."  ECF No. 9-4 PageID.1479.  Dr.

Shinwari acknowledged that Fitzgerald suffered from major depression and anxiety and that his claim logs indicated that he was prone to agitation.  However, he reasoned that the objective clinical findings from January through July 2020 did not reflect symptoms of disabling severity because the treatment notes generally documented normal mood, concentration, memory, and organized thought processes during the plaintiff's visits with Dr. Lathia and Ms. Hobson.  He therefore discounted Dr. Lathia's conclusion that Fitzgerald struggled with daily activities and instead emphasized Dr. Lathia's clinical observations concerning the plaintiff's mood, concentration, and judgment during office visits.  But Dr. Shinwari did not address Dr. Lathia's separate assessment that Fitzgerald's persistent inability to regulate his emotions and maintain concentration throughout the workday substantially impaired his capacity to sustain employment.

Soon after Dr. Shinwari completed that report, Dr. Lathia and Fitzgerald's other providers submitted additional treatment records and letters.  Those documents largely mirrored the prior records that Dr. Shinwari reviewed.  Two of the documents that Dr. Lathia submitted, however, differed from the prior materials.  First, he submitted a letter dated October 7, 2020 that outlined Fitzgerald's history of depression and anxiety and the symptoms.  The letter stated that Fitzgerald "has helplessness, hopelessness, decreased motivation, decreased ambition, issues with appetite, sleep, decreased concentration and memory, social isolation, severe anhedonia, excessive worry, muscle tension, irritability, [and] decreased energy."  *Id.* at PageID.1533.  These symptoms, Dr. Lathia explained, inhibited the plaintiff's ability to perform daily activities and rendered him unable to "have any gainful employment."  *Ibid.*  Second, Dr. Lathia submitted clinical notes from Fitzgerald's visit to him on October 9, 2020 that echoed his letter's conclusion that the plaintiff was unable to obtain gainful employment.

Dr. Shinwari amended his report at the end of October 2020 to account for the additional records.  He determined that the "additional medical information" did "not alter [his] prior opinion."  *Id.* at PageID.1482-83.  Referencing Dr. Lathia's October letter and visit notes, he acknowledged Fitzgerald's history of psychiatric ailments but posited that Dr. Lathia's conclusions were "inconsistent with the clinical findings" throughout the relevant period.  *Id.* at PageID.1483.  As support for that statement, Dr. Shinwari again stated that the clinical notes from Fitzgerald's visits reflected a mostly normal mental state during his visits with his providers.  *Ibid.*  Dr. Shinwari reaffirmed his position that the "medical information provided does not support any psychiatric functional impairment or limitation for the time period of current and beyond."  *Id.* at PageID.1484.

Dr. Fadul issued his assessment of Fitzgerald's physical ailments on November 17, 2020.  Dr. Fadul also conducted a file review and evaluated Fitzgerald's medical records dating back to 2016, supplemental questionnaires, and the Social Security Administration's decision denying the plaintiff SSD.  Dr. Fadul concluded that none of the plaintiff's physical conditions — including his fibromyalgia and hypertension — "warrant restrictions or limitations on his activities currently and beyond."  *Id.* at PageID.1437.  He highlighted Dr. Jordahl's assessments and found that Fitzgerald's primary medical concerns stem from psychiatric issues.  On December 2, 2020, Dr. Jordahl signed Dr. Fadul's report, stating that he supported the report's findings.  Two days later, Dr. Jordhal clarified that, in his opinion, Fitzgerald's psychiatric ailments "significantly interfere with his ability to perform at work" and he could not "maintain employment because of his underlying psychiatric conditions."  *Id.* at PageID.1424.

Nonetheless, on December 15, 2020, the defendant sent Fitzgerald a letter notifying him that it was terminating his LTD benefits.  The defendant relied on Dr. Shinwari and Dr. Fadul's conclusions from their file reviews.  It applied the 2011 certificate's definition of disability to those

conclusions and determined that it was "unable to approve benefits on [his] claim beyond December 15, 2020 because" he no longer satisfied that definition, *id.* at PageID.1416.

E.

Fitzgerald administratively appealed the termination of his benefits.  He submitted more medical records from visits to Dr. Lathia, Ms. Hobson, and Dr. Jordhal between December 2020 and April 2021.  Many of the medical records resembled those that were reviewed in the initial claim termination decision, mostly detailing Fitzgerald's depressed mood, agitated state, and inhibited mood regulation, with few anomalies.  One such anomaly was the notes from Fitzgerald's visit to Dr. Lathia in March 2021, where Dr. Lathia observed that although Fitzgerald generally was oriented, he exhibited obsessive thinking, impaired memory, difficulty sleeping, somatic preoccupation, anxiousness, and depression.  He was also severely depressed on a depression assessment, in which he responded that his depression made it "[e]xtremely difficult" to perform daily tasks and "get along with other people."  *Id.* at PageID.876.

The defendant hired two new consultants for the appeal.  It asked Dr. Elbert Richardson to focus on Fitzgerald's psychiatric conditions, and a separate consultant, Dr. Mahdy Flores, assessed his physical condition.  Both consultants completed reports.  Like Dr. Fadul and Dr. Shinwari, neither physician examined Fitzgerald nor had physical contact with him.

Dr. Flores issued his file review report on September 27, 2021, relying on Fitzgerald's medical records dating back to 2016, the Social Security Administration's SSD decision, and a letter from Fitzgerald's attorney.  He opined that Fitzgerald's physical conditions did not warrant "restrictions or limitations on his activities for the time period of 12/16/2020 ongoing." *Id.* at PageID.822.  To reach that opinion, he walked through each of Fitzgerald's ailments and

- 10 -

determined that none of the provided records "outline[d] a loss of function to support work-based restrictions" based on those ailments. *Id.* at PageID.823-24.

Dr. Richardson submitted his report the next day.  For his file review, he assessed Fitzgerald's medical records from 2016 to 2021, letters from Fitzgerald's attorney, supplemental questionnaires, and the medical consultants' reports that supported the termination decision.  Dr. Richardson concluded that "the evidence does not suggest that the [plaintiff] suffers from a medical condition or combination of conditions of such severity to warrant the placement of restrictions and limitations on his activities for the time period as of 12/16/20 ongoing." *Id.* at PageID.795. He reasoned that although Fitzgerald experienced symptoms of depression, they were not severe enough to "limit psychiatric functioning." *Ibid.*  He reasoned that no evidence suggested that Fitzgerald's condition precluded him from "work activities or daily functioning." *Ibid.*  In Dr. Richardson's view, Fitzgerald's medical records documented depression but "no evidence of other abnormalities" — he had no "psychomotor agitation, psychosis, delusions, hallucinations, homicidally, suicidality, self-destructive behaviors, or involuntary hospitalizations." *Ibid.*

After Dr. Richardson issued his report, Fitzgerald submitted additional medical records from his appointments with Ms. Hobson and Dr. Lathia from May 2021 to October 2021.  Like before, those records revealed that Fitzgerald exhibited a depressed mood, feelings of frustration and agitation, some obsessive thinking, somatic preoccupation, and distressed behavior.  Dr. Lathia also wrote another letter echoing his conclusion that Fitzgerald's severe depression and anxiety rendered him unable to "have gainful employment." *Id.* at PageID.891.

The additional materials did not alter Dr. Richardson's analysis, and he amended his report to address them.  Dr. Richardson contended that those materials lacked "measurable findings upon mental status examinations to preclude the [plaintiff] from work activities or daily functioning."

*Id.* at 797.  He also observed that "there was no mention of impairment in insight and" judgment in the new records.  *Id.* at PageID.798.

The defendant ultimately affirmed its decision to terminate Fitzgerald's LTD.  Although it recognized his numerous physical and psychiatric diagnoses, it again concluded that the record did not establish functional restrictions preventing him from performing any gainful occupation after December 15, 2020.  The defendant reviewed the existing claim file, counsel's appeal submission describing the cumulative effects of Fitzgerald's conditions, and the additional medical records submitted during the appeal.  It also reviewed Dr. Flores and Dr. Richardson's reports.  Relying on their consultant reports, the defendant determined that Fitzgerald had not established disability under the 2011 certificate and therefore upheld the termination of benefits as its final administrative decision.

F.

Fitzgerald commenced the present action on December 12, 2023, asserting a wrongful-denial-of-benefits claim under 29 U.S.C. § 1132(a)(1)(B) and seeking the reinstatement of his LTD payments.  The defendant moved to affirm its decision to deny Fitzgerald's continued LTD payments.  Fitzgerald countered with a motion to overturn the plan administrator's decision, reinstate his LTD benefits and award him past-due benefits.

The Court heard oral argument on the motions on June 18, 2026.

II.

Fitzgerald challenges the denial of benefits under section 502(a)(1)(B) of ERISA, which authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  "[T]he validity of a claim to benefits

under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Regardless of the language in the plan that the administrative decision is "final and binding," section 502 of ERISA affords participants of the plan a judicial remedy. *Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 545 (6th Cir. 2020). The Court considers only the evidence presented to the plan administrator at the time he or she determined the employee's eligibility, *Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir. 1997), and its review is limited to the administrative record, *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 615 (6th Cir.1998).

"[A] plan administrator's decision is reviewed 'under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund,* 203 F.3d 926, 933 (6th Cir. 2000) (quoting *Firestone Tire & Rubber Co.,* 489 U.S. at 115). The parties agree that the *de novo* review standard applies. That means that the court determines "'whether the administrator . . . made a correct decision,'" without affording the administrator deference. *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 808 (6th Cir. 2002) (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990). In other words, the Court focuses on the accuracy of the administrator's decision, *Messing v. Provident Life & Accident Ins. Co.*, 48 F.4th 670, 678 (6th Cir. 2022), rather than the process employed to reach it, *Laake v. Benefits Comm., W. & S. Fin. Grp. Co. Flexible Benefits Plan*, 68 F.4th 984, 991 (6th Cir. 2023).

A.

The parties question which Plan certificate applies. The administrative record includes both the 2011 certificate, upon which the defendant relied when terminating the LTD benefits, and

- 13 -

the 2016 certificate, which sets out a definition of disability that is more generous to the plaintiff here.  On the other hand, the 2016 certificate is more limiting on the duration of LTD benefits.

The record here establishes that the 2016 certificate, not the 2011 certificate, governs Fitzgerald's claim for LTD benefits.  The chronology leaves little room for dispute.  The 2016 certificate became effective on January 1, 2016.  It was later that year that Fitzgerald applied for LTD benefits, and on October 21, 2016, the defendant approved the claim.  Therefore, the 2016 certificate supplied the terms governing Fitzgerald's entitlement to benefits.

The broader record confirms this point.  When the defendant responded to Fitzgerald's request for the governing plan documents, it sent counsel the "Certificate of Insurance utilized in the administration of" the plaintiff's LTD claim.  ECF No. 9-4, PageID.720.  The document enclosed was the 2016 certificate, not the 2011 certificate.  *See id.* at PageID.722-63.  The defendant's claim activity logs tell the same story.  Throughout its administration of Fitzgerald's claim, the defendant applied the definition of disability contained in the 2016 certificate.  Only near the end of that process, as it prepared to terminate benefits, did the defendant abandon that definition and instead invoke the less favorable definition found in the 2011 certificate.

B.

Because the Court applies fresh, non-deferential review to the benefit termination decision, Fitzgerald "'must prove by a preponderance of the evidence' that he remains disabled according to the [p]lan's terms."  *Messing*, 48 F.4th at 678 (quoting *Javery v. Lucent Techs., Inc. Long Term Disability Plan for Mgmt. or LBA Emps.*, 741 F.3d 686, 700 (6th Cir. 2014)).  Because the plan does not limit proof of continuing disability to objective evidence alone, both subjective and objective evidence may be weighed in determining whether the plaintiff has met his burden.  *Laake v. Benefits Comm., W. & S. Fin. Grp. Co. Flexible Benefits Plan*, 68 F.4th 984, 996 (6th Cir. 2023).

Applying those criteria, it is apparent that the defendant improperly terminated Fitzgerald's benefits under the 2016 certificate.    The defendant does not dispute that Fitzgerald continued to suffer from a sickness and received appropriate treatment for his ailments, thereby satisfying the first part of the 2016 certificate's disability definition.  Nor does it dispute that Fitzgerald was not employed by another employer when it terminated his benefits.  As a result, Fitzgerald's task is narrow: he must show, by a preponderance of the evidence, that his medical conditions prevented him from working for Nexteer in a job for which he was qualified from December 15, 2020 and beyond.  Fitzgerald comes up short on proofs relating to his physical condition.  But the evidence of his psychiatric conditions leaves little doubt as to his disabled status.

1.

The defendant plan administrator found that all medical evidence indicates that Fitzgerald's physical conditions imposed no functional restrictions on his ability to work.  Every medical professional who reviewed his file, including his treating physician, Dr. Jordahl, found no basis to restrict Fitzgerald's ability to return to work based on his physical ailments.  Dr. Jordahl based all employment limitations on Fitzgerald's severe psychiatric conditions.  This medical consensus undermines any argument that his physical conditions satisfied the plan's definition of disabled for the relevant period.  *See McAlister v. Liberty Life Assur. Co. of Bos.*, 647 F. App'x 539, 546 (6th Cir. 2016) (collecting cases positing that where the claimant's own medical evidence agreed with the plan administrator's, it undercuts his wrongful-denial-of-benefits claim).

2.

The parties raise several evidentiary disputes concerning the psychiatric evidence that warrant preliminary attention.  First, the defendant argues that Fitzgerald misconceives the burden of proof.  On that point, the defendant is correct.  Both the plan and Sixth Circuit precedent place

- 15 -

the burden on the plaintiff to establish that he remained disabled during the relevant review periods. *See* ECF No. 9-4, PageID.752; *Messing*, 48 F.4th at 678.  Fitzgerald therefore cannot satisfy that burden merely by pointing to the same psychiatric *diagnoses* that supported the original award of benefits.  To conclude otherwise would "impl[y] that it is up to [the defendant] to prove that [the plaintiff] is no longer disabled in order to terminate [his] benefits."  *Donatiello v. Hartford Life & Accident Insurance Co.*, 344 F. Supp. 2d 575, 580 (E.D. Mich. 2004) (citing *Miller v. Metropolitan Life Insurance Co.*, 925 F.2d 979, 985 (6th Cir. 1991)).

That does not mean, however, that Fitzgerald's medical history or the defendant's own prior disability determinations drop out of the analysis.  The governing inquiry depends on the terms of the plan and a showing that his conditions prevented him from performing work at Nexteer.  Therefore, the defendant's earlier decisions remain relevant insofar as they identify the functional limitations that previously led it to conclude that Fitzgerald could not perform jobs within his Nexteer job class.  If the evidence shows that those same limitations persisted during the relevant review period, the defendant's prior findings necessarily inform whether he remained disabled under the governing definition.

Those earlier findings would hold less significance if the 2011 certificate furnished the relevant disability criteria; it asked whether the plaintiff could perform *any* gainful work available in the local economy.  But the 2016 certificate materially alters the inquiry; the relevant question is whether Fitzgerald remained capable of performing covered work at Nexteer.  In that context, the defendant's explanation for its original award of LTD benefits provides an important benchmark for evaluating whether Fitzgerald's functional capacity materially changed.

The parties next dispute the significance of the SSA's denial of disability benefits.  The plaintiff contends that the defendant's consulting physicians improperly relied on the SSA's

decision. The defendant responds that Sixth Circuit precedent permits a plan administrator to consider such determinations. Again, the defendant is correct as far as it goes.

An SSA determination neither controls nor binds an ERISA administrator because the governing standards differ. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 293 n.4 (6th Cir. 2005); *Whitaker v. Hartford Life & Accident Insurance Co.*, 404 F.3d 947, 949 (6th Cir. 2005). But neither is the SSA's decision irrelevant. When it contains medical findings or evidence bearing on the claimant's continued disability assessment, it may either support or undermine the administrator's determination. *See Calvert*, 409 F.3d at 293.

Here, the SSA decision has limited relevance. Having been issued in April 2019, it predates the defendant's 2020 claim review and therefore cannot resolve whether Fitzgerald remained disabled during the relevant period. Moreover, the SSA decision, relying on vocational expert findings, determined that the plaintiff could perform a limited range of medium-exertion jobs, such as dishwasher, warehouse worker, hand packer, and janitor. But those jobs do not fall within the scope of the manufacturing positions encompassed by Fitzgerald's Nexteer job class. The SSA finding therefore tends to favor Fitzgerald because it shows that he could work only in socially isolated positions outside Nexteer.

Finally, Fitzgerald argues that the Court should entirely discount the reports of Drs. Shinwari and Richardson, because each psychiatrist rendered his opinion based solely on a file review, and they did not examine the plaintiff. Fitzgerald principally relies on *Sheehan v. Metropolitan Life Insurance Co.*, 368 F. Supp. 2d 228, 254 (S.D.N.Y. 2004), where the court observed that "[c]ourts routinely discount or entirely disregard the opinions of psychiatrists who had not examined the individual in question at all or for only a limited time." *Sheehan*, of course, is not controlling authority, although it states a sensible proposition when the review of a benefit

denial decision is *de novo.* But the Sixth Circuit has repeatedly explained that there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." *Calvert*, 409 F.3d at 296. A failure to examine a patient is not disqualifying, but "whether the doctor has physically examined the claimant is indeed a factor" that courts may consider when evaluating the weight to afford the opinion. *Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 508 (6th Cir. 2005).

That consideration is particularly important in psychiatric disability cases. The Sixth Circuit has recognized that "file reviews are questionable as a basis for identifying whether an individual is disabled by mental illness." *Javery v. Lucent Technologies, Inc. Long Term Disability Plan for Management or LBA Employees*, 741 F.3d 686, 702 (6th Cir. 2014). That is because "[e]valuation of mental health necessarily involves 'subjective symptoms,' which are most accurately ascertained through 'interviewing the patient and spending time with the patient,' such that a purely record review will often be inadequate where a disability claim includes a mental component." *Okuno v. Reliance Standard Life Ins. Co.*, 836 F.3d 600, 610 (6th Cir. 2016) (quoting *Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 508 (6th Cir. 2008)). A paper review may consequently prove inadequate where it fails to grapple with the evidence bearing on those symptoms.

Turning to the record, Fitzgerald has established by a preponderance of the evidence that he remained disabled under the 2016 certificate when the defendant terminated his long-term disability benefits. The defendant's prior claim determinations frame the inquiry. From the start of the defendant's providing Fitzgerald disability benefits, it concluded that his severe depression and anxiety prevented him from performing positions within his Nexteer job class because he could not control his emotions, work effectively with others, and exercise the judgment required

in a manufacturing environment.  ECF No. 9-5, PageID.2853-55, 2893-903, 2932-33, 2946-47, 2955-57, 2976-78, 3001-02, 3020-22, 3042.  Those functional limitations, not the mere existence of psychiatric diagnoses, supported the original award of benefits.  The question, then, is whether Fitzgerald proved that those same or similar limitations persisted during the relevant review period.

The record establishes that he did.  True, the evidence does not demonstrate that Fitzgerald was burdened by materially deteriorated judgment in December 2020.  But the record does establish that his inability to regulate his emotions and function effectively with others remained substantially unchanged.

The objective medical evidence is the strongest evidence on that point.  Most significant is the supplemental functional questionnaire completed by Fitzgerald's treating psychiatrist, Dr. Lathia, which constitutes critical objective evidence that cannot be overlooked in a disability determination.  *Shaw v. AT & T Umbrella Ben. Plan No. 1*, 795 F.3d 538, 548 (6th Cir. 2015).  After treating Fitzgerald for nearly three years, Dr. Lathia concluded, based on his clinical observations, that Fitzgerald continued to lack the ability to regulate his emotions and maintain concentration throughout a normal workday, limitations that he concluded significantly impaired Fitzgerald's functional capacity.  ECF No. 9-4, PageID.1786-88.  He further explained that workplace stress would aggravate Fitzgerald's severe anxiety, depression, insomnia, and somatic preoccupation, rendering him incapable of performing manual work.  *Id.* at PageID.1786-87.

Dr. Lathia's conclusions are consistent with his treatment records.  His contemporaneous notes consistently documented depressed or anxious mood, somatic preoccupation, reduced sleep, and diminished appetite, even while recording intact judgment, organized thought processes, and appropriate behavior during office visits.  *Id.* at PageID.1305, 1311, 1315, 1317-19.  Those findings are not mutually exclusive.  A claimant may present as oriented, cooperative, and

cognitively intact during an office visit while remaining unable to regulate emotions or sustain the interpersonal functioning necessary for employment. Dr. Lathia's functional questionnaire reflects precisely that distinction.

The remaining treating providers documented the same clinical picture. Throughout 2020, Diane Hobson repeatedly observed depressed and anxious mood, moderately impaired functioning, hopelessness, and persistent agitation, anger, and frustration, notwithstanding otherwise organized thinking and orientation. Likewise, Dr. David Jordahl consistently documented depressed mood, observed that the plaintiff's depression remained uncontrolled and worsened with chronic pain, and ultimately concluded that the plaintiff's psychiatric conditions significantly interfered with his ability to work. These independent observations, viewed together, depict a consistent clinical course.

That conclusion finds further support in Dr. Lathia's October 2020 letter and contemporaneous treatment notes. Shortly before the defendant terminated benefits, Dr. Lathia documented helplessness, hopelessness, decreased motivation, impaired concentration and memory, social isolation, irritability, excessive worry, muscle tension, and decreased energy, concluding that those symptoms prevented Fitzgerald from engaging in gainful employment. His treatment notes from October 9, 2020 reached the same conclusion.

Fitzgerald's subjective reports reinforce these objective findings. Throughout 2020, he consistently reported unstable moods, insomnia, diminished appetite, agitation, frustration, anger, impaired concentration, social withdrawal, and difficulty regulating his emotions. Those complaints tracked the clinical observations recorded by his treating psychiatrist, therapist, and primary care physician.

The consulting reports of Drs. Shinwari and Richardson do not alter that conclusion.  Their reviews were thorough in the sense that each physician considered, among other things, years of treatment records, claim logs, and administrative documents.  But the analysis in their reports was incomplete.  Both psychiatrists emphasized Fitzgerald's intact memory, judgment, concentration during office visits, and organized thought processes.  Neither, however, meaningfully addressed Dr. Lathia's central functional finding — that, notwithstanding those intact cognitive findings during visits, the plaintiff remained unable to regulate his emotions or sustain concentration over the course of a normal workday.  Nor did either explain why the repeated observations of depressed mood, anxiety, agitation, frustration, and hopelessness failed to translate into workplace limitations.  Because the consulting reports never meaningfully addressed that distinction, and instead relied on cherry-picked observations that lacked context, their analyses fail to engage the central evidence supporting disability.

The consulting reports also contained reasoning that effectively heightened the standard for disability.  Both highlighted that Fitzgerald never needed enhanced levels of care, like involuntary hospitalization, and did not suffer from suicidal ideation.  However, under the plan, whether someone required higher levels of care or suffered suicidal ideation is not relevant.  What is relevant is whether Fitzgerald's depression and anxiety prevented him from performing a qualifying job at Nexteer, something neither consultant discussed.  Moreover, the reports emphasized a lack of "measurable" findings of symptoms of mental illness. Yet mental illness is difficult to measure, *Okuno*, 836 F.3d at 610, and the plan requires only that Fitzgerald provide proof of continued disability, which includes medical assessments from treating physicians.  Fitzgerald provided abundant proof on that point.  Therefore, because "the reports appear to apply a significantly heightened standard for a disabling mental illness that contravenes the definition

- 21 -

provided in the [p]lan," the reports' analytical value is in question. *Hayden v. Martin Marietta Materials, Inc. Flexible Benefits Program*, 763 F.3d 598, 607-08 (6th Cir. 2014). Drs. Shinwari and Richardson's analytical gaps substantially diminish the persuasive value of their already questionable psychiatric consulting file reviews.

Fitzgerald has established by a preponderance of the evidence that he remained disabled under the 2016 certificate's disability definition when the defendant terminated his LTD benefits. The record demonstrates that the functional limitations the defendant itself previously found disabling — most notably Fitzgerald's inability to regulate his emotions and work effectively with others — persisted throughout the relevant review period. The contemporaneous assessments of Fitzgerald's treating providers, supported by consistent clinical observations and Fitzgerald's reported symptoms, are more persuasive than the defendant's psychiatric file reviews, which failed meaningfully to address why those limitations no longer prevented Fitzgerald from performing work at Nexteer. Fitzgerald has satisfied his burden of proving continued disability under the governing plan.

C.

Because the Court has determined that Fitzgerald is entitled to benefits, the Court may either remand the case to the plan administrator or award the sought benefits. *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007). Remanding a case "to the plan administrator is appropriate 'where the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled.'" *Hayden*, 763 F.3d at 609 (quoting *Cooper*, 486 F.3d at 171). However, "[p]lan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits. They need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not

getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable." *Cooper*, 486 F.3d at 172.

That reasoning applies here.  Although the defendant's decision was procedurally flawed because it applied the wrong plan certificate, remand would serve no useful purpose.  The administrative record demonstrates that Fitzgerald remained disabled when the defendant terminated his LTD benefits and throughout the ensuing administrative appeal.  Nothing in the record suggests that further proceedings would alter that conclusion.  Because Fitzgerald has established his entitlement to benefits, the defendant is not entitled to a second opportunity to evaluate the claim.

Fitzgerald's recovery, however, is limited by the terms of the governing plan.  As explained above, the 2016 certificate provides a maximum LTD benefit period of 60 months.  The plaintiff began receiving benefits on October 24, 2016.  His entitlement therefore expired on October 24, 2021.  Fitzgerald is entitled to an award of unpaid long-term disability benefits from December 15, 2020, the date on which the defendant improperly terminated those benefits, through October 24, 2021, when the maximum benefit period expired.

## III.

The defendant's termination of the plaintiff's long-term disability benefits was improper.  He is entitled to the benefits that remained for the unexpired term under the 2016 plan certificate.  He may present a supplemental filing that calculates that amount and then seek judgment.

Accordingly, it is **ORDERED** that the defendant's motion to affirm the administrative record (ECF No. 10) is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for judgment (ECF No. 13) is **GRANTED**.

It is further **ORDERED** that the plaintiff is **AWARDED** unpaid long-term disability benefits from December 15, 2020 to October 24, 2021. He may submit a supplemental brief calculating the amount of those benefits and seek judgment **on or before July 30, 2026**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: July 9, 2026